# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 6556 | DATE | 7/17/2002 |
| CASE TITLE | Audrey Hemphill vs. Jo Anne B. Barnhart, Commissioner | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for summary judgment [15-1] is denied. Defendant's motion for summary judgment [16-1] is granted. Judgment is entered in favor of Defendant Jo Anne Barnhart, Commissioner of Social Security and against Plaintiff Audrey Hemphill. This case is hereby dismissed with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 18 2002 | |
| | Notified counsel by telephone. | | date docketed | 18 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| RO | courtroom deputy's initials | 02 JUL 17 PM 1:41 U.S. DISTRICT COURT CLERK | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AUDREY HEMPHILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 01 C 6556 |
| v. ) | |
| ) | Judge Ruben Castillo |
| JO ANNE B. BARNHART[1], ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**DOCKETED JUL 1 8 2002**

## MEMORANDUM OPINION AND ORDER

Plaintiff Audrey Hemphill seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), Jo Anne Barnhart, denying her supplemental security income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. § 1381 *et seq.* Ms. Hemphill contends that Administrative Law Judge ("ALJ") Stephen H. Templin's decision denying her benefits should be reversed or remanded for a new hearing because it was not supported by substantial evidence. Both Ms. Hemphill and the Commissioner now move for summary judgment. Because we find that the ALJ reasonably concluded that Ms. Hemphill could perform her past work as a hospital ward clerk and was therefore not disabled within the meaning of the Act, we affirm the ALJ's decision, deny Ms. Hemphill's motion for summary judgment, (R. 15-1), and grant the Commissioner's cross-motion for summary judgment, (R. 16-1).

---

[1] On November 9, 2001, Jo Anne B. Barnhart became the Commissioner of Social Security. Therefore, pursuant to Federal Rule of Civil Procedure 25(d)(1) and 42 U.S.C. § 405(g), Barnhart is automatically substituted as Defendant in this action.



## RELEVANT FACTS

Ms. Hemphill was forty-nine years old at the time of the ALJ's decision and has a high school education. Ms. Hemphill has alleged disability since January 9, 1994. She has experience as an assembly line worker and was last employed as a hospital ward clerk. Ms. Hemphill complains of pain in her left and right upper extremities as well as in her right leg. Furthermore, she complains that her pain has limited her ability to walk, stand or sit for extended periods of time.

### I. Ms. Hemphill's Hearing Testimony

On January 8, 1999, Ms. Hemphill testified before ALJ Templin at a Social Security Administration ("SSA") hearing in Chicago, Illinois. At the hearing, Ms. Hemphill testified that the pain in her left shoulder was a result of an accident she had at work in 1994. (R. 13, Admin. R. at 50-51, SSA Hr'g Tr.) Additionally, she maintained that her right hand was weak because she "messed up" a nerve in her right shoulder. (*Id.* at 55.) Ms. Hemphill also testified that an electromyographical test, completed at Mount Sinai Hospital, revealed a problem in her right shoulder. In addition, Ms. Hemphill stated that she wears a brace on her right knee for a pinched nerve allegedly caused by a fall at Cook County Hospital in 1984. (*Id.* at 49.) Ms. Hemphill maintained that she is in physical and occupational therapy because of the pain in her right leg and left upper extremity. Ms. Hemphill also noted that her occupational therapist did not show her how to use her right hand to take the place of her left hand.

Ms. Hemphill testified that her duties as a hospital ward clerk at Cook County Hospital included stamping charts, lifting heavy supplies and bringing supplies upstairs. As a ward clerk, she lifted supplies – sometimes with help – about once a week. She further stated that she may have been required to lift more than twenty pounds. (*Id.* at 45.)

2

## II. Medical Evidence

Between January 1994 and November 1995, Dr. Romeo, an orthopedic specialist at Rush Presbyterian-St. Luke's Medical Center, treated Ms. Hemphill for the pain in her left shoulder. On January 3, 1995, Dr. Romeo indicated that Ms. Hemphill was seven months post-surgery for a left shoulder rotator cuff repair and distal clavicle resection. Ms. Hemphill complained to Dr. Romeo of pain in her left shoulder and of a lack in progress with physical therapy. On March 14, 1995, Ms. Hemphill returned to Dr. Romeo and alleged that she was unable to use her left dominant arm and that she continued to suffer from pain in her left shoulder. Dr. Romeo stated that there was pain in her left shoulder, but that there was no substantial atrophy. In addition, he noted that Ms. Hemphill's range of motion in her left shoulder was limited.

On April 24, 1995, Ms. Hemphill underwent an electromyographical/nerve conduction study (EMG/NCV), which revealed no evidence of active cervical or peripheral neuropathy. The study did, however, reveal evidence of incidental mild carpal tunnel syndrome (CTS) on her left side. Dr. Romeo examined Ms. Hemphill again on October 24, 1995. He stated that based on answers to her subjective questionnaire, Ms. Hemphill was unable to perform simple everyday activities. He opined that the small size of Ms. Hemphill's shoulder and arm was most likely related to disuse atrophy. Dr. Romeo asserted that Ms. Hemphill's examination was "filled with substantial inconsistencies" and that she had "a tremendous amount of subjective symptoms that are not well supported from her objective diagnosis." (*Id.* at 231, Oct. 24, 1995 Romeo Exam. Rpt.) He recommended that she use her arm as much as she could tolerate. Dr. Romeo also maintained that Ms. Hemphill had reached her maximum level of medical improvement.

On July 30, 1996, Dr. Snickenberger, an orthopedic specialist, evaluated Ms. Hemphill. At this time, Ms. Hemphill indicated that she had burning pain and numbness that extended from

3

her left shoulder to her hand. Dr. Snickenberger found that there was mild swelling of the left hand and forearm and some loss of flexion in her finger joints. He further observed that the range of motion in her shoulder was somewhat limited. He stated that Ms. Hemphill's skin color in her left upper extremity was slightly darker than the right. Dr. Snickenberger believed that Ms. Hemphill might have reflex sympathetic dystrophy and suggested repeat physical therapy. Ms. Hemphill returned to Dr. Snickenberger on April 4, 1997 for a follow-up examination. At this examination, he found that Ms. Hemphill had limited motion of her left shoulder, left elbow and the joints of her left hand. In addition, he found evidence of a muscle spasm, swelling and numbness. Dr. Snickenberger recommended occupational therapy.

In September 1997, Dr. Parker, another orthopedic specialist, evaluated Ms. Hemphill. Dr. Parker indicated that occupational therapy had not relieved Ms. Hemphill's pain. Dr. Parker reported that Ms. Hemphill had a positive compression test, a positive Phalen's sign and diffuse numbness on the entire hand. Ms. Hemphill also had decreased range of motion of the shoulder with good range of motion of the elbow. Dr. Parker's impression was that Ms. Hemphill might have sympathetic dystrophy of the upper left extremity. For her pain, he recommended that she continue occupational therapy and referred her to a pain clinic.

On November 10, 1997, a state agency physician reviewed Ms. Hemphill's records for a physical residual functional capacity ("RFC") assessment. The agency physician opined that Ms. Hemphill was capable of performing a restricted range of light work. In May 1998, Dr. Parker completed a "Medical Assessment of Ability to Do Work-Related Activities" form. He stated that there was no limitation on Ms. Hemphill's ability to stand, walk or sit. Dr. Parker further indicated that Ms. Hemphill's ability to lift was limited to five pounds. Handling, pushing and pulling were also affected.

4

In June 1998, Ms. Hemphill's treating physician, Dr. Okai, wrote a letter stating that Ms. Hemphill was unable to return to work due to her difficulty in moving her left upper extremity. He also observed weakness in Ms. Hemphill's right arm, which he believed would make it difficult for her to lift and to write. Dr. Okai further maintained that Ms. Hemphill should be considered for disability.

In August 1998, clinical psychologist Dr. Langgut examined Ms. Hemphill at the request of the state disability examiners. Dr. Langgut reported that Ms. Hemphill gave highly questionable and unlikely answers regarding her ability to perform calculations. On the Weschler Adult Intelligence Scale-Revised (WAIS-R), Ms. Hemphill received a full-scale IQ of fifty-two, which would indicate that she was functioning in the mentally deficient range of intellectual ability. Dr. Langgut stated, however, that her scores were of "highly questionable validity." (*Id.* at 330, Aug. 10, 1998 Langgut Exam. Rpt.) He also opined that it was difficult to understand the severe deterioration of cognitive and intellectual skills that Ms. Hemphill claimed accompanied her physical injuries. Finally, Dr. Langgut indicated that a "disingenuous profile" must be considered. (*Id.* at 331.)

In August 1998, Dr. Smith performed a consultative examination also at the request of the state disability examiners. Ms. Hemphill stated that she was unable to lie on her left side and that she had arm jerks, numbness and problems with her right knee. X-rays of her hands showed a minimal degree of disuse atrophy in her left hand. X-rays of her left elbow were normal. The x-rays of her left shoulder showed post-operative changes. Dr. Smith concluded that there was no evidence of reflex sympathetic dystrophy. He found no objective or radiographic findings for her right knee complaints, but noted that she had a "hopping gait." (*Id.* at 320, Aug. 11, 1998 Smith Exam. Rpt.) He stated that she could lift up to twenty pounds. Dr. Smith further asserted that

5

Ms. Hemphill's overhead lifting was reduced to ten pounds, but that she retained the ability to sit, stand and walk. He also found that Ms. Hemphill could occasionally climb, balance, stoop, crouch, kneel and crawl. Dr. Smith opined that Ms. Hemphill's ability to handle and to feel might have been affected by the impairments of her left hand, shoulder and arm. He recommended that Ms. Hemphill avoid unprotected heights and moving machinery due to her use of Amitriptyline, an anti-depressant.

In December 1998, Dr. Okai completed a "Physical Capacities Evaluation" form. He indicated that Ms. Hemphill had a less than sedentary work ability. He found that Ms. Hemphill was unable to stoop, reach above shoulder level or use her left arm for gross manipulation. Dr. Okai also opined that Ms. Hemphill had a limited ability to use her right arm for gross manipulation and could not use either her left or right arm for pushing, pulling or fine manipulation. Dr. Okai stated that Ms. Hemphill's left arm weakness affected her ability to work. On a separate form, Dr. Okai indicated that Ms. Hemphill could not sit or stand due to severe pain in both of her hands and that she could lift less than five pounds. He noted that Ms. Hemphill could not bend or kneel due to pain in her shoulder, arm and hand. Dr. Okai opined that her bilateral hand pain and weakness made it difficult for her to work and that her disability was indefinite.

In February 1999, Ms. Hemphill was examined by Dr. Gordon, a physician for the Illinois Department of Public Aid. Dr. Gordon indicated that Ms. Hemphill had moderate tenderness in her left shoulder, right wrist, right arm, right knee and right shoulder. X-rays were taken of her right knee which revealed mild osteoarthritis with joint narrowing and minimal marginal spurs. X-rays of the right hand revealed moderate arthritic changes with PIP joint narrowing, periarticular sclerosis and osteopenia. Dr. Gordon opined that Ms. Hemphill had a twenty to fifty

percent limitation in walking, standing, stooping, pushing, pulling, climbing, gross manipulation and travel by public conveyance.

### III. Expert Testimony

At the SSA hearing, vocational expert Dr. Michael Comie answered several questions regarding Ms. Hemphill's vocational profile and RFC. Dr. Comie's assessment was based on the statements of Dr. Stevens, an internal medicine specialist who reviewed Ms. Hemphill's record. Dr. Stevens testified that Ms. Hemphill was restricted to lifting no more than ten pounds. He maintained that Ms. Hemphill was able to use her left arm mainly to assist her right arm. Dr. Stevens further testified that Ms. Hemphill had an unlimited ability to use her right arm. He also asserted that she could sit, stand or walk for at least six hours of an eight-hour workday. He found, however, that she could not reach, handle, finger or feel with her left arm and that she was unable to work around machinery. Finally, at the hearing, Dr. Stevens noted Ms. Hemphill's unwillingness to cooperate with various doctors during physical examinations of her left upper extremity.

Dr. Comie testified that Ms. Hemphill's past work as a hospital ward clerk required occasional lifting, computer-related work and putting x-rays into the computer. He further testified that her work was performed at a light exertional level. The ALJ then asked Dr. Comie whether, based on Dr. Stevens's testimony, Ms. Hemphill could perform the physical demands of her past relevant work. Dr. Comie responded that she could not.

When asked whether an individual with Ms. Hemphill's vocational profile and RFC would be able to perform work in the national economy, Dr. Comie stated that he could not identify a significant number of jobs that such a person could perform. His reply was based

7

primarily on the assumption that the hypothetical individual's dominant hand was completely useless and that the person had no retraining to the non-dominant hand.

**IV. ALJ's Decision**

On March 3, 1999, ALJ Templin decided that Ms. Hemphill was not disabled within the meaning of the Act and that she was therefore not entitled to SSI. In reaching this conclusion, the ALJ completed the five-step analysis required by SSA regulations. 20 C.F.R. §§ 416.920, 404.1520. First, the ALJ determined that Ms. Hemphill had not been engaged in substantial gainful activity at any time since the onset of her alleged disability. Second, he concluded that the medical evidence established that Ms. Hemphill had at least one severe impairment. Third, the ALJ found that Ms. Hemphill did not have a listed impairment or combination of impairments. He also stated that Ms. Hemphill's reports of symptoms and functional limitations with regard to her left upper extremity were disproportionate to objective medical findings. Further, he found that Ms. Hemphill had demonstrated a disingenuous response profile in her psychological testing.

At the fourth step in his analysis, the ALJ determined that Ms. Hemphill retains the capacity to perform the exertional and nonexertional requirements of work, although she is limited to lifting or carrying up to twenty pounds at one time or fifteen pounds frequently. He added that Ms. Hemphill was able to frequently lift more than ten pounds overhead and handle with her left upper extremity. The ALJ further asserted that Ms. Hemphill was able to work at unprotected heights and around moving equipment. Based on these findings, the ALJ concluded that Ms. Hemphill's RFC allowed her to perform her past work as a hospital ward clerk. The ALJ noted that in reaching his conclusions, he had relied heavily on the observations and conclusions of examining physician Dr. Smith.

Currently, before this Court is Ms. Hemphill's motion for summary judgment and the Commissioner's cross-motion for summary judgment. On appeal, Ms. Hemphill contends that: (1) the ALJ failed to properly weigh the medical opinions of her treating physicians; (2) the ALJ gave insufficient explanations for rejecting certain evidence; (3) the ALJ made an independent medical assessment; and (4) the ALJ's credibility determination of Ms. Hemphill was unsupported by the record.

## LEGAL STANDARDS

The standard of review for final decisions of the Commissioner (here, the ALJ) in federal benefits cases is deferential. *Kendrick v. Shalala*, 998 F.2d 455, 458 (7th Cir. 1993). If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and quotation omitted). Yet, the ALJ's findings must be supported by more than a mere scintilla of the evidence. *Id.* This Court may not "decide the facts anew, re-weigh the evidence or substitute its own judgment for that of the Commissioner to decide whether a claimant is or is not disabled." *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000). Thus, the question raised on this appeal is not whether Ms. Hemphill is disabled, but whether substantial evidence supports the Commissioner's finding that Ms. Hemphill was not disabled within the meaning of the Act. *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987).

To receive disability benefits, a claimant must be "disabled" as defined by the Act. An individual is disabled if he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 416(i). In determining disability, the ALJ must engage in a five-step inquiry. *Dixon v. Massanari*, 270 F.3d 1171, 1176

(7th Cir. 2001). First, the ALJ must ascertain whether the claimant is currently employed. Second, the ALJ must decide whether the claimant has a severe impairment. Third, the ALJ must determine whether the claimant's impairment is one that the Commissioner considers conclusively disabling. Fourth, if the claimant does not have a conclusively disabling impairment, the ALJ must decide whether the claimant can perform her past relevant work. Finally, the ALJ must establish whether the claimant is capable of performing any work in the national economy. 20 C.F.R. § 404.1520. The ALJ will not review further if he makes a dispositive conclusion at any step in the inquiry. *Id.* at § 416.920(a).

## ANALYSIS

### I. The ALJ's decision was supported by substantial evidence.

Ms. Hemphill argues that the ALJ's findings were not supported by substantial evidence. In particular, Ms. Hemphill argues that ALJ Templin: (1) gave insufficient weight to reports given by treating physicians; (2) failed to give any reason for his implicit rejection of certain medical opinions; (3) made an independent medical assessment; and (4) made credibility findings which were unsupported by the record as a whole.

#### A. Sufficient weight was given to the treating physicians' reports.

Ms. Hemphill contends that the ALJ did not give sufficient weight to the medical opinions of treating physicians Drs. Okai, Snickenberger and Parker. Specifically, she argues that Drs. Snickenberger and Parker were in the best position to assess her functional limitations because of their familiarity with her physical conditions and because they are orthopedic specialists. She further contends that it was misleading for the ALJ to state that Dr. Okai failed to provide laboratory or clinical findings to support his diagnoses and assessments of Ms. Hemphill's functional capacity because Dr. Okai was relying on both his observations, as well as

10

those of Drs. Snickenberger and Parker. Finally, Ms. Hemphill asserts that Dr. Smith's conclusions should be given less weight primarily because he is not a treating physician.[2] The Commissioner counters that because there were inconsistencies between the reports of various treating and examining physicians, the ALJ was justified in rejecting Ms. Hemphill's treating physicians' opinions.

An ALJ's decision must be based on the testimony and medical evidence in the record. *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). The ALJ is required to examine and weigh all the relevant evidence in order to evaluate to what extent the claimant's impairments affect her ability to work. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). A treating physician's opinion is not necessarily given controlling weight; rather, the opinion must be well supported by medical findings and not inconsistent with other substantial evidence in the record. *Shramek v. Apfel*, 226 F.3d 809, 814 (7th Cir. 2000). Moreover, if treating and consulting physicians present conflicting evidence, the ALJ has the discretion to decide whom to believe, as long as substantial evidence supports the ALJ's decision. *Dixon*, 270 F.3d at 1177; 20 C.F.R. § 404.1527(d)(2). When an ALJ chooses to honor the assessment of a non-treating physician, he need only show that he duly considered the relative merits of the treating physician's opinion as well as the opinions of other doctors. *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996).[3]

---

[2] Ms. Hemphill states more specifically that many of Dr. Smith's statements were inconsistent with those of the treating physicians. Additionally, she asserts that Dr. Smith should have mentioned the prior diagnoses made by Drs. Snickenberger and Parker of reflex sympathetic dystrophy. Finally, she claims that Dr. Smith's conclusion that Ms. Hemphill was uncooperative in range of motion testing was not shared by her treating physicians.

[3] The ALJ may also consider the biases that a treating physician may bring to the disability evaluation. *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir.1985) ("[t]he patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability.").

11

ALJ Templin did not err in failing to give Dr. Okai's opinion controlling weight because Dr. Okai's medical opinion was unsupported by medical findings and inconsistent with other evidence in the record, such as the medical opinion of Dr. Smith. *See Shramek,* 226 F.3d at 814. Dr. Okai opined that Ms. Hemphill could lift a maximum of five pounds with restrictions on pushing, pulling and handling and that Ms. Hemphill would have difficultly engaging in gainful employment because of the problems with her hands. Yet, Dr. Okai provided no laboratory or clinical findings to support this conclusion. *See id.* In contrast, the opinion of examining physician Dr. Smith, an orthopedic specialist, was supported by objective medical evidence including diagnostic x-rays. *See Veal v. Bowen,* 833 F.2d 693, 698–699 (7th Cir. 1987) (accepting the ALJ's decision to credit evidence supported by a series of x-ray results over a physician's opinion of plaintiff's complaints). Dr. Smith found that x-rays of Hemphill's hands revealed a minimal degree of disuse atrophy and osteoporosis in her left hand and that her left elbow was normal. He also stated that Hemphill was able to lift up to twenty pounds with overhead lifting reduced to ten pounds. Furthermore, Dr. Smith found no objective or radiographic findings regarding Hemphill's complaints of a right knee problem. Therefore, because Dr. Okai's opinion was not supported by objective clinical or laboratory findings and because there were inconsistencies in the record as a whole, the ALJ did not err in discounting Dr. Okai's opinion.[4]

---

[4] The parties primarily focus on the ALJ's treatment of Dr. Okai's opinion. Ms. Hemphill's argument regarding the ALJ's treatment of her treating physicians, however, also refers to the opinions of Drs. Snickenberger and Parker. Here, we find that the ALJ was correct in not giving controlling weight to the opinions of Drs. Snickenberger and Parker because there were inconsistencies among their reports and the record as a whole. For instance, while Dr. Parker stated that Ms. Hemphill could lift up to five pounds, Dr. Smith believed she could lift up to twenty. (R. 13, Admin. R. at 319, May 4 1998 Parker Exam. Rpt.; *Id.* at 322, Aug. 12, 1998 Smith Exam. Rpt.) Thus, the ALJ was justified in rejecting those opinions which he found inconsistent with other evidence in the record. *See Shramek,* 226 F.3d at 817.

**B. The ALJ did not fail to articulate his reasons for rejecting certain testimony.**

Ms. Hemphill next argues that the ALJ erred in not articulating his reasons for rejecting the evidence of certain treating and examining physicians. She first asserts that the ALJ did not give sufficient reasons for rejecting the medical opinions of her treating physicians, who indicated that there were objective signs of pain and of an inability to move the left hand and left shoulder normally. She also contends that the ALJ erred in not articulating his reasons for rejecting the opinions of examining physician Dr. Stevens and vocational expert Dr. Comie. The Commissioner contends that because there were inconsistencies between the different physicians' opinions, the ALJ properly addressed and rejected Dr. Okai's opinion. Moreover, the Commissioner argues that Dr. Snickenberger did not provide a medical opinion regarding Ms. Hemphill's ability to work. Finally, the Commissioner maintains that the ALJ articulated his reason for rejecting Dr.Stevens' opinion when he stated that Dr. Stevens had factored Ms. Hemphill's lack of cooperation into his decision.

An ALJ's "decision must be based on consideration of *all* relevant evidence and the reasons for his conclusion must be stated in a manner sufficient to permit an informed review." *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988) (emphasis in original) (citations omitted). The court does not require a written evaluation of every piece of evidence. *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). Yet, in cases where the claimant presents considerable proof to counter the agency's position, the ALJ must articulate – at some level – his analysis of the evidence to allow the appellate court to trace the path of his reasoning and to assure the court that he considered the important evidence. *Id.*

First, we find that the ALJ sufficiently articulated his reasons for rejecting the opinion of Dr. Okai. As mentioned above, the ALJ found that there were no objective medical findings for Dr. Okai's conclusion that Ms. Hemphill was limited to lifting a maximum of five pounds and was restricted in pushing, pulling and handling. *See Edwards,* 985 F.2d at 337. Furthermore, the ALJ discussed the conflicting conclusions and opinions of Drs. Snickenberger, Smith, Stevens, Parker and Okai. *See Shramek,* 226 F.3d at 814.

Second, the ALJ did not err in not stating his reasons for rejecting Dr. Snickenberger's opinion. As the Commissioner correctly argues, Dr. Snickenberger did not provide a medical opinion regarding Ms. Hemphill's ability to work. Specifically, Dr. Snickenberger's discussion of Ms. Hemphill's impairments does not state how these limitations affect Ms. Hemphill's ability to work – the key issue at step four. Because Dr. Snickenberger's opinion was not directed to Ms. Hemphill's ability to work, the ALJ was not required to comment on it. *See Garfield v. Schweiker,* 732 F.2d 605, 610 (7th Cir. 1984) (holding "that all medical evidence that is credible, supported by clinical findings, and *relevant to the question at hand* should be considered and discussed by the ALJ") (emphasis added).

Third, the ALJ did not err in his treatment of Dr. Stevens' opinion. Dr. Stevens stated that Ms. Hemphill could lift ten pounds occasionally and less than ten pounds frequently. He also stated that Ms. Hemphill could only use her left arm as an assist to her right arm. The ALJ provided the Court with sufficient insight into his reasoning for not including Dr. Stevens' opinion. Specifically, the ALJ remarked that Dr. Stevens' RFC assessment factored in Ms. Hemphill's lack of cooperation with her physicians and other medical professionals on the use of her left upper extremity. *See Rohan,* 98 F.3d at 971.

14

Fourth, we also reject Ms. Hemphill's argument that the ALJ erred by not giving a reason for disregarding Dr. Comie's testimony. Dr. Comie relied upon Dr. Stevens' RFC assessment to conclude that Ms. Hemphill could not be expected to meet the demands of her past relevant work and to determine that he could not cite a significant number of jobs that Ms. Hemphill could perform in the national economy. As we have noted above, the ALJ properly disregarded Dr. Stevens' testimony regarding Ms. Hemphill's RFC. Hence, Dr. Comie's testimony became discredited once the ALJ rejected Dr. Stevens' report. *See Ray*, 843 F.2d at 1002. Thus, the ALJ was not required to specifically address Dr. Comie's testimony in his opinion. *See Green*, 51 F.3d at 101 ("[a] written evaluation of each piece of evidence . . . is not required").

Finally, we conclude that the ALJ should have specifically discussed his reasons for rejecting Dr. Parker's opinion. Dr. Parker discussed Ms. Hemphill's physical limitations in his evaluation. For example, in his Medical Assessment of Ability to Do Work-Related Activities, he indicated that Ms. Hemphill could only lift up to five pounds and that her abilities to handle, push and pull with her left arm were affected. The ALJ did not state that Dr. Parker's evaluation was unsupported by objective medical evidence, nor did he state that his reason for rejecting the evidence was based on the visible inconsistencies in the record. That leaves this Court to improperly speculate on the ALJ's reasons for rejecting the evidence. As Judge Shadur so pointedly stated, "no court should be forced to engage in speculation as to the reasons for an ALJ's decision." *Williams v. Bowen*, 664 F. Supp. 1200, 1207 (N.D. Ill. 1987) (citing *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)).

Nevertheless, the ALJ's oversight of Dr. Parker's assessment does not mandate remand. Even had the ALJ accepted Dr. Parker's assessment, he still could have reasonably found Ms. Hemphill was not disabled. There were inconsistencies between the different medical opinions

15

in the record. As we have noted, the ALJ has the discretion to decide whom to believe so long as that decision is based on substantial evidence. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). Therefore, even inclusive of Dr. Parker's opinion, the ALJ could have properly relied on Dr. Smith's opinion that Ms. Hemphill could perform the full range of light work and conclude that she could perform her past relevant work. Because including Dr. Parker's opinion would not have necessarily changed the outcome of the ALJ's decision, his flaw in not explaining his reasons for rejecting that opinion will not require remand.

### C. The ALJ did not make an independent medical assessment.

Ms. Hemphill next argues that the ALJ erroneously "played doctor" when he stated that x-rays were taken of her "right hand, right shoulder, and right knee which revealed minimal, age related, degenerative changes." (R. 13, Admin. R. at 24, ALJ Decision.) She claims that because no physician had the opportunity to comment on the x-rays, there was no medical or other support for the ALJ's conclusion. *See Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) (an ALJ may not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record). Furthermore, Ms. Hemphill argues that a proper interpretation of the x-ray results suggests that they provide the missing support for her contention of pain in her right upper and lower extremities. The Commissioner responds that Dr. Stevens, who reviewed the record, stated that there was no objective evidence to support Ms. Hemphill's right extremity complaints. He adds that the reports reflect the ALJ's findings.

As Ms. Hemphill correctly states, the Seventh Circuit has warned the ALJ not to succumb to the temptation of playing doctor or to make independent medical findings. *Wilkins v. Sullivan*, 889 F.2d 135, 140 (7th Cir. 1989). The Seventh Circuit has reversed the Commissioner's decision because an ALJ impermissibly 'played doctor' by failing to address relevant evidence.

16

*See Dixon*, 270 F.3d at 1177. Here, the ALJ addressed the relevant medical evidence, which included the x-rays of Ms. Hemphill's right hand, shoulder and knee. The ALJ noted that "the medical expert [Dr. Stevens] explained that there was no medically determinable impairment established concerning [Ms. Hemphill's] right upper extremity." (R. 13, Admin. R. at 25, ALJ Decision.) Furthermore, the ALJ noted that Dr. Smith found no objective basis for Ms. Hemphill's complaint regarding her knee. (*Id.* at 23.) Thus, because the ALJ did not ignore this relevant evidence – but rather relied on the opinion of Drs. Stevens and Smith in reaching the conclusion that there was no objective evidence to support Ms. Hemphill's claim of an impairment of the right extremity – he did not "play doctor" or make an independent medical assessment. *See Dixon*, 270 F.3d at 1178. *See also Rohan*, 98 F.3d at 970 (reversing the Commissioner's decision because the ALJ improperly substituted his judgment for that of a physician when he disregarded the opinion and evidence submitted by that physician).

**D. The ALJ's credibility findings were supported by the record.**

Finally, Ms. Hemphill argues that the ALJ's finding that her testimony was not credible was unsupported by the record as a whole. Specifically, Ms. Hemphill contends that where she demonstrated inconsistencies, they were unrelated to her physical impairments. She maintains that she gave no inconsistent statements regarding her pain or other functional limitations. Last, she argues that the ALJ should have made additional inquiries as to whether her report of symptoms and functional limitations were, in fact, disproportionate to objective medical findings. The Commissioner responds that – based on the evidence in the record – the ALJ could reasonably conclude that Ms. Hemphill's statements were not entirely credible. The Commissioner bases this argument on Dr. Romeo's statement that Ms. Hemphill's subjective

17

symptomatology was unsupported by her objective diagnosis and on Dr. Langgutt's conclusion that the presence of a disingenuous profile should be considered.

This Court will not disturb an ALJ's credibility determination unless it is "patently wrong" and so long as that determination finds some support in the record. *Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989). According to Social Security Ruling 96-7p, "the ALJ's determination or decision regarding claimant's credibility must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statement and the reasons for that weight." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (quotation omitted).

The ALJ based his credibility finding on the fact that there were inconsistencies in Ms. Hemphill's testimony. For example, Ms. Hemphill's report of symptoms and functional limitations in her upper left extremity were disproportionate to objective medical findings. The ALJ also cited the testimony of evaluating psychologist Dr. Langgut who noted "the highly questionable nature of [Ms. Hemphill's] responses" and that "the presence of a disingenuous response profile must be considered." (R. 13, Admin. R. at 331, Aug. 10, 1998 Langgut Exam. Rpt.) *See Herr*, 912 F.2d at 181-82 (stating that the psychiatrist's opinion of the plaintiff provided the ALJ with "grounds to question whether [the plaintiff's] testimony could be unqualifiedly credited").

Ms. Hemphill has not shown that the ALJ did not have sufficient reason to conclude that her testimony was not credible. As noted, the ALJ included in his decision the inconsistencies in Ms. Hemphill's statements as well as the opinions of several doctors who believed that she was not completely credible. Thus, we do not find that it was necessary for the ALJ to conduct

18

further inquiries because there was sufficient evidence in the report to support his credibility findings. *See Griffith*, 138 F.3d at 1153-54 (finding that the ALJ was not required to obtain an additional physician's report because there was already sufficient evidence on the issue). Because the ALJ's credibility determination is supported by the record and is clearly articulated, it is not patently wrong and will not be disturbed by this Court.

## CONCLUSION

We reiterate that the standard of review for disability cases is deferential. Thus, this Court may not decide what determination we would have made as an ALJ deciding this case. While this Court is sympathetic to Ms. Hemphill's physical impairments, we cannot find – given the applicable legal standards – that the ALJ's decision was not supported by substantial evidence. We urge ALJ's, however, to be more thorough in their treatment of medical evidence.

Therefore, for the reasons contained in this opinion, we deny Ms. Hemphill's motion for summary judgment, (R. 15- 1), and grant the Commissioner's cross-motion for summary judgment, (R. 16-1). The Clerk of the Court is instructed, pursuant to Federal Rule of Civil Procedure 58, to enter judgment in favor of Defendant Jo Anne Barnhart and against Plaintiff Audrey Hemphill.

ENTERED:

Judge Ruben Castillo
United States District Court

**Dated: July 17, 2002**